UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

MARK ANTHONY FRENCH,

Plaintiff,

v.

COMMUNITY MENTAL HEALTH OF CLINTON, EATON & INGHAM COUNTIES, et al.,

Defendants.
_______________________________/

Case No. 1:26-cv-02391

Hon. Jane M. Beckering
U.S. District Judge

**REPORT AND RECOMMENDATION**

## I. Introduction

*Pro se* Plaintiff Mark Anthony French filed this lawsuit under 42 U.S.C. § 1983 against the following named Defendants:

- Community Mental Health of Clinton, Eaton and Ingham Counties,
- Leanna Woods,
- John Carta,
- City of Charlotte,
- Charlotte Police Department,
- Matt Castle,
- Jonny Fullerton,
- Sergeant Jeremy Hafner,
- University of Michigan Health-Sparrow,
- Dr. Maya R. Waltzer,

- Bronson-Acadia Joint Venture, LLC, and
- Dr. Jonathan Dargo.

In addition, Plaintiff sues John Does 1-20.

It appears that French has a history of mental health treatment, despite his claim otherwise. Previously, French filed *French v. Community Mental Health Authority of Clinton, Eaton, and Ingham Counties*, W.D. Mich. Case No. 1:26-cv-2222, asserting that during his "involuntary detention and hospitalization" for mental health treatment, he continued to receive injectable medication even after it was discontinued. In that case, French attached to his complaint an order issued by the Eaton County Probate entitled: "Order After Notice of Noncompliance With Assisted Outpatient Treatment Or Combined Hospitalization And Assisted Outpatient Treatment Order." *See* W.D. Mich. Case No. 1:26-cv-2222, ECF No. 1-3, PageID.12. This Probate Court Order is dated June 26, 2026, and states that the Court had issued an order on April 13, 2026, for French to receive outpatient care or combined hospital treatment with assisted outpatient treatment. *Id.* The Order notes that French failed to comply with that order, so the Court directed a peace officer to take him into protective custody and transport him to a hospital for a preadmission screening. *Id.*

In the instant case, W.D. Mich. Case No. 1:26-cv-2391, French alleges that on Jan. 14, 2025, Defendant Woods prepared a mental-health petition and John Carta was identified as a witness. *Id.*, PageID.4. French was observed with manic/delusional thought process and was "religiously preoccupied and speaking

3rd person." *Id.*, PageID.6. The petition stated that witnesses describe French as "delusional, paranoid, sealed speech, unable to understand need for treatment." *Id.* French disputes the accuracy of the witness statements and challenges the mental-health petition *Id.*

On that same day, Charlotte Police Officers Castle, Fullerton, and Hafner took Plaintiff into their custody based upon the mental-health petition. *Id.*, PageID.4, 7. French was taken to the University of Michigan-Sparrow Hospital in Lansing, Mich. *Id.*, PageID.5. At the hospital, he was evaluated by Defendant Dr. Waltzer who characterized French as acutely psychotic, with pressured speech, and religious delusions. *Id.*, PageID.7-8. Plaintiff was then transferred to Bronson Behavioral Institute (Defendant Bronson-Acadia Joint Venture in Battle Creek, Mich.). *Id.*, PageID.7. At Bronson, French was evaluated by Dr. Dargo who wrote: "Patient presents with elevated and irritable affect grandiosity, pressured speech and tangential thought process." *Id.*, PageID.8. Dr. Dargo also noted that French admitted "past bouts of days with less need for sleep", "he is all knowing", and "was breaking things and grabbing ex-girlfriend." *Id.*, PageID.9. Plaintiff disputes Dr. Dargo's statements. *Id.*

Plaintiff alleges that emergency room documents were not disclosed to him. *Id.* He asserts that he was held for approximately 45 days while waiting for his mental-health hearing. *Id.*, PageID.10. As a result, Plaintiff says that he lost business and was unable to service his customers. *Id.* Plaintiff alleges that "Defendants sought to administer psychiatric medication . . . against his will." *Id.*

Plaintiff objected to the medication due to his religious beliefs. *Id.* Nevertheless, Plaintiff says that an "order concerning medical was entered during Plaintiff's confinement." *Id.*, PageID.11.

Plaintiff alleges that Officers Castle, Fullerton, Hafner, and other officers violated his Fourth Amendment right against unreasonable search and seizure when he was restrained on Jan. 15, 2025, and taken to the hospital. *Id.*, PageID.12. Plaintiff alleges that he was denied his First Amendment rights to express his religious beliefs because the mental-health petition stated that he was "religiously preoccupied and speaking in 3rd person." *Id.*, PageID.13. He further alleges that he was denied liberty without due process in violation of his Fourteenth Amendment rights because he was hospitalized for 45 days before he received a hearing on the mental-health petition. *Id.*, PageID.14. He further asserts that his religious rights were violated when he was involuntarily given medication. *Id.* He asserts that the City of Charlotte is liable due to policies, customs, and procedures, and the failure to train or supervise. *Id.*, PageID.16.

Plaintiff seeks compensatory and punitive damages, declaratory and injunctive relief, and costs and expenses. On August 21, 2026, Plaintiff was granted in forma pauperis status. ECF No. 4.

## II. Analysis

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any action brought *in forma pauperis* if the action is (1) frivolous or malicious; (2) fails to state a claim on

which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.* The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although the plausibility standard is not equivalent to a "probability requirement, . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

In addition, the Court must read Plaintiff's *pro se* complaint indulgently, see *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

French attached a copy of the Petition For Mental Health Treatment that was filed in the Eaton County Probate Court in case number 24-60110-MI. ECF No. 1-1. The petition, authored by Mental Health Therapist Woods, states in part as follows:

☐ This petition is for a person who was found not guilty by reason ...

3. I believe the individual has mental illness and
   - ☐ a. as a result of that mental illness, the individual can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure self or others, and has engaged in an act or acts or made significant threats that are substantially supportive of this expectation.
   - ☐ b. as a result of that mental illness, the individual is unable to attend to those basic physical needs that must be attended to in order to avoid serious harm in the near future, and has demonstrated that inability by failing to attend to those basic physical needs.
   - ☑ c. the individual's judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

4. The conclusions stated above are based on
   a. my personal observation of the person doing the following acts and saying the following things: Several welfare checks requested in past week due to Marks manic/delusional thought processes and actions. Mark is religiously preoccupied and speaking in 3rd person
   b. the following conduct and statements that others have seen or heard and have told me about: Delusional, Paranoid, Salad speech, unable to understand the need for treatment

by: John Cantu (Witness name) 812 E. Jolly Rd. Lansing MI (Complete address) 517 346-955 (Telephone no.)

Approved, SCAO
Form PCM 201, Rev. 3/23
MCL 330.1100a, MCL 330.1401, MCL 330.1423, MCL 330.1427, MCL 330.1434, MCL 330.1436, MCL 330.2050, MCR 5.125(C)(18)
Page 1 of 2

STATE OF MICHIGAN
COUNTY OF EATON
I hereby certify that this is a true and compared copy of the original record which is in my legal custody in the Probate Court for said County.
[signature] 1/15/25
Deputy Probate Register Date

SRA

FILED
JAN 17 2025
EATON CO. PROBATE CT.

ECF No. 1-1, PageID.19.

French attached a copy of the Report on Examination and Clinical Certificate authored by Dr. Maya R. Weltzer, MD., of the University of Michigan Health-Sparrow Lansing Emergency Room. That report states in part:

1. My determination is that the individual:
   - ☐ is not a person requiring treatment under the Mental Health Code and a clinical certificate is not warranted. (Proceed to item 3.)
   - ☑ is a person requiring treatment under the Mental Health Code and requires hospitalization pending the hearing.
   - ☐ is a person requiring treatment under the Mental Health Code and does not require hospitalization pending the hearing.

CLINICAL CERTIFICATE

2. I believe the individual has mental illness, specifically acute psychosis (State Diagnoses) and
   ... the individual can reasonably be expected within the near future to intentionally or unintentionally seriously ... substantially supportive of this expectation.

☑ c. the individual's judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

Facts in support:

Acutely psychotic, pressured speech, religious delusions that he is all knowing and a disciple of the jesus mom the site

3. Additional information that underlies the conclusion that the individual ☑ is ☐ is not a person requiring treatment:

ECF No. 1-2, PageID.21-22.

French attached a copy of the Report on Examination and Clinical Certificate authored by Dr. Jonathan Dargo, MD, which states in part:

1. My determination is that the individual:
   - ☐ is not a person requiring treatment under the Mental Health Code and a clinical certificate is not warranted. (Proceed to item 3.)
   - ☑ is a person requiring treatment under the Mental Health Code and requires hospitalization pending the hearing.
   - ☐ is a person requiring treatment under the Mental Health Code and does not require hospitalization pending the hearing.

**CLINICAL CERTIFICATE**

☑ 2. I believe the individual has mental illness, specifically Bipolar Disorder I, currently manic, severe with psychosis (State diagnoses) and

☑ a. as a result of that mental illness, the individual can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure self or others, and has engaged in an act or acts or made significant threats that are substantially supportive of this expectation.

Facts in support:
Patient presents with elevated and irritable affect, grandiosity, pressured speech and tangential thought process. He does admit to past bouts of days with less need for sleep. According to ER documents, patient said he was all knowing. It also said that he was breaking things and grabbing ex-girlfriend.

ECF No. 1-3, PageID.23.

### 1. Defendants City of Charlotte, Charlotte Police Dept., Officers Castle, Fullerton, and Hafner

Plaintiff asserts that the police officer Defendants and City of Charlotte were involved in unlawfully seizing him and taking him to the hospital in violation of his Fourth Amendment rights. The Sixth Circuit has held that in the context of a mental health seizure, an officer must have probable cause to believe that the person seized poses a danger to himself or others. *Ziegler v. Aukerman*, 512 F.3d 777, 783 (6th Cir. 2008). The Sixth Circuit further stated:

> A showing of probable cause in the mental health seizure context requires only a "probability or substantial chance" of dangerous behavior, not an actual showing of such behavior. *Id.* (citing *Illinois v. Gates,* 462 U.S. 213, 245 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Just as actual innocence will not render invalid an arrest that is properly based upon probable cause that criminal activity was occurring, a mental health seizure can rest upon probable cause even when the person seized does not actually suffer from a dangerous mental condition. *Id.* Courts evaluate the existence of probable cause from the perspective of a reasonable and objective person in the position of the seizing official. *Id.* "If the circumstances, viewed objectively, support a finding of probable cause [then] the arresting officer's actual motives are irrelevant." *Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir.1988).

*Id.* Here, the officers who took Plaintiff to the hospital did so based upon the Mental-Health petition. The officers acted with probable cause by relying on the Mental Health petition and Plaintiff's lawsuit against the officers, the Charlotte Police Department, and the City of Charlotte is accordingly frivolous.

**2. The Mental-Health Petition**

Under the Michigan Health Code, a cause of action generally may not be filed against the individuals who acted in good faith based upon a belief that an individual requires mental health treatment. Mich. Comp. Laws. § 330.1439 states:

> (1) A cause of action is not cognizable against a person who in good faith files a petition under this chapter alleging that an individual is a person requiring treatment, unless the petition is filed as the result of an act or omission amounting to gross negligence or willful and wanton misconduct.
>
> (2) A cause of action is not cognizable against a preadmission screening unit or its employees or contractors or a crisis stabilization unit or its employees or contractors, who in good faith makes a determination as to whether an individual is a person requiring treatment or not, unless the determination is the result of an act or omission amounting to gross negligence or willful and wanton misconduct.

*Id.*

French disagrees with the assessment that he required treatment for a mental health condition. But French has not asserted any facts that could plausibly show that any Defendant acted in a manner that could be characterized as gross negligence or willful and wanton misconduct. Accordingly, it is the opinion of the undersigned that Mich. Comp. Laws. § 330.1439 bars his claims against Defendants.

**3. Defendants Carta, University of Michigan Heath-Sparrow, Dr. Waltzer, Bronson-Acadia Joint Venture, LLC, Dr. Dargo, and Does 1-20**

French sues several private actors. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In order for a private party's conduct to be under color of state law, it must be fairly attributable to the State. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be a sufficiently close nexus between the State and the challenged action of the defendant so that the action of the latter may be fairly treated as that of the State itself. *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

The fact that a Defendant may receive public funding and is licensed by the state does not render them state actors for purposes of § 1983. *See Rendell-Baker v.*

*Kohn*, 457 U.S. 830, 840 (1982) (nonprofit, privately operated schools receipt of public funds did not make its employee discharge decisions acts of state subject to suit under federal statute governing civil action for deprivation of rights); *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (allegation that hospital and social worker were subject to state licensing was insufficient to support finding that defendants were acting under color of state law); *Adams v. Vandemark*, 855 F.2d 312, 315–16 (6th Cir. 1988) (fact that nonprofit corporation was funded almost entirely by public sources, and was subject to state regulation, without more, is insufficient to make private entity's decision to discharge employees attributable to state for purpose of § 1983 action).

In the opinion of the undersigned, Defendants Carta, University of Michigan Heath-Sparrow, Dr. Waltzer, Bronson-Acadia Joint Venture, LLC, Dr. Dargo, and Does 1-20 are entitled to dismissal because French has failed to allege that these individuals or entities are state actors.

**4. *Rooker-Feldman***

Plaintiff is essentially asking this Court to overturn and reconsider the actions of the Eaton County Probate Court in case number 24-60110-MI. ECF No. 1-1. However, his recourse is to present his arguments in the probate court, and to appeal the probate court decision in the state courts, not in a new federal lawsuit. French cannot appeal the state court decision in this court.

That is because the United States Supreme Court is vested with exclusive jurisdiction over appeals from final state-court judgments. *Lance v. Dennis*, 546 U.S. 459 (2006). The *Rooker-Feldman* doctrine is based on 28 U.S.C. § 1257, which grants

the Supreme Court jurisdiction to review the decisions of the highest state courts for compliance with the Constitution. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 467 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). Under the doctrine, "lower federal courts do not have jurisdiction to review a case litigated and decided in state court; only the United States Supreme Court has jurisdiction to correct state court judgments." *Gottfried v. Medical Planning Servs.*, 142 F.3d 326, 330 (6th Cir. 1998). Thus, "[t]he Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance*, 546 U.S. at 460 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Recently, the U.S. Supreme Court confirmed that the Rooker-Feldman doctrine applies regardless of whether the state court judgment is subject to further litigation in the state system.

> Under what has become known as the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005**). This case asks whether this rule bars suit when the state-court judgment at issue is subject to further review in state appellate proceedings. A straightforward application of the logic and reasoning underlying *Rooker-Feldman* leads to one conclusion: It does.**

*T. M. v. Univ. of Maryland Med. Sys. Corp.*, 608 U.S. 668, 672 (2026) (emphasis added).

Accordingly, this Court lacks jurisdiction to overrule or review the decisions of the Eaton County Probate Court.

## III. Recommendation

Accordingly, the undersigned respectfully recommends that the Court dismiss the complaint because it is frivolous and fails to state a claim upon which relief may be granted.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: October 20, 2026

/s/ Maarten Vermaat
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE